J-A16028-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRE BRANCH-SAMUELS | : | |
| | : | |
| Appellant | : | No. 1255 WDA 2023 |

Appeal from the PCRA Order Entered September 18, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006189-2016

BEFORE: KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY MURRAY, J.: **FILED: July 31, 2024**

Andre Branch-Samuels (Appellant) appeals from the order dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. This case returns to us after we vacated a prior order denying PCRA relief, and remanded the matter to the PCRA court for an evidentiary hearing. *See Commonwealth v. Branch-Samuels*, 297 A.3d 730, 131 WDA 2022 (Pa. Super. 2023) (unpublished memorandum at 7). Upon careful examination, we affirm.

This Court previously detailed the underlying facts:

On April 1, 2016, Dontae Thompson was shot multiple times while driving his vehicle[, in the Sandusky Court neighborhood in the City of Pittsburgh,] by someone driving a white Ford Focus. Police recovered two surveillance videos, which were introduced at trial as Commonwealth Exhibits 23 and 40. Exhibit 23 was a video of the shooting; Exhibit 40 showed an unidentified male parking a [white] Ford Focus [at a different location in Pittsburgh (the Elmore Square housing projects), shortly after the shooting,] and

the driver leaving with a male. Detectives Gary Messer [(Detective Messer)] and Judd Emery [(Detective Emery)] identified the male in Exhibit 40 as [Appellant]. He was arrested and charged.

*Commonwealth v. Branch-Samuels*, 220 A.3d 686, 548 WDA 2018 (Pa. Super. 2019) (unpublished memorandum at 1) (internal citation omitted).

In April 2016, the Commonwealth charged Appellant with criminal homicide and related offenses. The matter proceeded to a jury trial in October 2017. This Court explained the evidence presented at trial:[1]

> Detective Edward Fallert [(Detective Fallert)] testified that he was one of the first detectives at the scene of the shooting. While there[,] he was contacted by the public safety coordinator for the Pittsburgh Housing Authority, Jade Burka [(Burka)], who told him that [Burka] had obtained surveillance footage of the shooting, *i.e.*, Exhibit 23. After viewing the video, Burka determined that the shooter was driving a white Ford Focus; he also obtained the license plate number. With this information, Detective Fallert learned that Jenea Price [(Price)] had rented the vehicle on the day in question from Enterprise Rent-A-Car. Detective Messer also watched the video and recognized a male named Shawn Yancey [(Yancey)]. Police brought Yancey to the police station and Yancey handed over the keys to the Ford Focus. After speaking with Yancey, Detectives Messer and Emery located the Ford Focus in a parking lot. Additionally, police seized Yancey's cell phone as evidence[.] Detective Emery found on it a photo taken a day before the murder, depicting Yancey, [Appellant], and another male. Yancey was wearing the same clothing in the photo as he was wearing the day of the murder.

*Id.* (unpublished memorandum at 4-5) (internal citations omitted). This Court continued:

> Detectives also recovered surveillance footage of the parking lot where they found the Ford Focus, *i.e.*, Exhibit 40.

---

[1] Kenneth J. Haber, Esquire (trial counsel), represented Appellant at trial.

Detective Emery[,] in his testimony at trial[,] described the contents of the video as follows:

> The white car comes in, driven by a person that I recognized as [] Yancey. It pulls into a spot and another individual gets out of the back of the gray car that followed it in there. An individual gets out of the back of that car[,] goes over and talks to Yancey[,] then walks back over and gets in the car and Yancey turns the car around.

[N.T., 10/12-19/17,] at 219.

Detective Messer testified that when he viewed [Exhibit 40], he also recognized Yancey in the video. He testified that from his prior dealings with [Appellant,] he knew that Yancey associated with [Appellant]. *Id.* at 167, 173. He also testified that he recognized [Appellant] in the video as well, again based on his prior interactions with [Appellant]. While [Detective Messer] admitted that he could not clearly see the face of the individual that he believed to be [Appellant], he testified that other factors[,] including [Appellant's] "gait, meaning the way he walks, his mannerisms, his height, build, his hair, who he was associated with at the time of the incident, [and] where he was [located] when [the shooting] occurred," led [Detective Messer] to believe that it was [Appellant]. *Id.* at 175.

*Branch-Samuels*, 220 A.3d 686 (unpublished memorandum at 5-6).

The *Branch-Samuels* Court further stated:

Detective Emery testified that during a search of the Ford Focus, detectives discovered four shell casings "in the area of the wiper and down in below the wipers." [N.T., 10/12-19/17,] at 212-13. They also found a copy of the rental agreement for the vehicle in the vehicle. *Id.* at 266. The rental agreement listed [] Price as the renter of the vehicle from March 26, 2016[,] through April 2, 2016, *i.e.*, including on the day in question.

Price testified that [Appellant] asked her to rent the vehicle to get to work and go to a birthday party. *Id.* at 386-87. The two went to Enterprise together, Price signed the rental agreement and listed [Appellant,] as well as two other individuals[,] on the paperwork as references. *Id.* at 267.

Afterwards, [Appellant] drove the Ford Focus off the lot. Price also testified that on the day of the shooting, Enterprise contacted her to inform her that the vehicle was involved in a homicide.

Detective Emery testified that he recovered text messages from Price's phone, some of which had been deleted. *Id.* at 654-55. The deleted text messages were from conversations between Price and [Appellant] on the day of the homicide. *Id.* at 655, 657-58. The detective testified that a text message Price received from an unsaved number on the day of the homicide read, "Yo, report that rental stolen." *Id.* at 659. Price then texted, "April Fools," to the number she had listed as [Appellant's] cell phone. [Appellant] responded, "Naw, I'm so serious." *Id.* at 660.

* * *

**During closing argument, the Commonwealth presented a *zoomed-in version* of Exhibit 40**, the video of the Focus in the parking lot. [**Trial**] **counsel objected**[,] and the following was discussed at side-bar:

> The Court: Ms. Page [Assistant District Attorney (ADA)], is it the same vantage point as what was shown, the same video, the video that Detective Emery received from Elmore Square and that you produced in discovery in this case?
>
> [ADA]: Yes, Your Honor. It is the exact same video but zoomed-in. The disc that was entered into evidence, Commonwealth's Exhibit 40, has Detective Emery's original handwriting on it, it has the original case number and all identification markers that he uses to mark the CDs. … I placed the original [Exhibit] 40 into the computer. It's the exact same information, it is the exact same video only zoomed-in utilizing the technology given to [trial counsel].
>
> The Court: I'm going to let her play it.
>
> [Trial Counsel]: Judge, can I please argue this further? This is what happened. The Commonwealth provided in discovery the Elmore Square video. That's the one they played for the jury. That's the one they entered into [the] chain of custody….

- 4 -

The Court: And that's the one that the detective signed, that's the one played for the jury.

[Trial Counsel]: Correct. **The one they're playing now was a separate disc given to me in discovery. It was enhanced.** And I sat here through the entire trial wondering why aren't they playing the enhanced video. There are still photos on here. There's the … zoomed-in Elmore [Square video (Exhibit 40)], and I'm sitting there thinking why [hav]en't they entered that exhibit. I was waiting to object to it or at least … question whoever they were to enter [the exhibit into evidence] through[,] so that I could determine if there was a proper foundation laid for what was done to the video. The Commonwealth can't[,] after the close of evidence and in closing[,] show a video that the jury hasn't already seen that is zoomed-in without … me having an opportunity to question how [the Commonwealth] went about zooming in. What was used? What technology did you use, did it change?

The Court: No, [trial counsel], I disagree. This is, in fact, the disc that was provided to you and not a separate disc that has videos from both Elmore Square and Sandusky [Court] and still photos. This is not that discs, [*sic*] it was played for the jury. The case law indicates that the Commonwealth may highlight videos and technology does allow them to zoom in[,] and what she has done, according to [the ADA's] representation, has zoomed-in on Exhibit 40.

N.T., [10/12-19/17,] at 765-67 [(emphasis added)]. Thus, the trial court allowed the Commonwealth to present the zoomed-in version of the video.

***Branch-Samuels***, 220 A.3d 686 (unpublished memorandum at 8-12)

(emphasis added; footnote omitted).

The jury subsequently convicted Appellant of one count each of first-degree murder, carrying a firearm without a license, and tampering with or fabricating physical evidence.[2]

The trial court sentenced Appellant to life in prison on January 10, 2018. Following the denial of post-sentence motions, Appellant filed a direct appeal.

On appeal, Appellant claimed, *inter alia*, the trial court improperly "allowed the Commonwealth to present new evidence during closing argument by playing the enhanced version of Exhibit 40." **Branch-Samuels**, 220 A.3d 686 (unpublished memorandum at 13) (brackets and internal quotation marks omitted). This Court agreed, stating that, because "neither the prosecution nor the defense presented the video in a zoomed-in fashion during trial[, i]t therefore was not presented 'in the same manner' as it was presented at trial." *Id.* at 14-15 (quoting **Commonwealth v. Lilliock**, 740 A.2d 237, 243 (Pa. Super. 1999)). Although the trial court erred, we concluded such error was harmless and thus did not merit reversal. *Id.* at 15-16.

The **Branch-Samuels** Court cited **Commonwealth v. Fulton**, 179 A.3d 475 (Pa. 2018), which held an error may be deemed harmless, *inter alia*, where "there was other uncontradicted evidence of the defendant's guilt such that the error could not have contributed to the verdict." *Id.* at 493 (citation and quotation marks omitted); *see also Branch-Samuels*, 220 A.3d 686

---

[2] **See** 18 Pa.C.S.A. §§ 2501(a), 6106(a)(1), 4910(1).

(unpublished memorandum at 15). We concluded, "the Commonwealth's evidence, though circumstantial, was sufficient to prove that [Appellant] was involved in the shooting." ***Id.*** at 16. The evidence included:

- The rental agreement for the Focus that listed [Appellant] as a reference;

- Price's testimony that she rented the Focus for [Appellant's] use;

- Price's testimony that [Appellant] accompanied her to Enterprise and drove off in the Focus after she signed the rental agreement;

- [Appellant's] text message to Price [ask]ing her to report the rental as stolen.

***Id.*** at 15-16 (citation omitted). Accordingly, we affirmed Appellant's judgment of sentence.[3] ***Id.*** at 15-16, 21.

On December 11, 2020, Appellant timely filed the instant PCRA petition, his first, through Randall H. McKinney, Esquire (PCRA counsel). PCRA counsel raised a single claim of after-discovered evidence in the form of a new eyewitness, Tijuan Brown (Brown). PCRA counsel stated Brown "will testify that [Appellant] was not the individual [who] entered the Ford Focus moments before the shooting[,] thereby exonerating [Appellant]." PCRA Petition, 12/11/20, at 8 (capitalization modified); ***see also id.*** Ex. A (Brown's Affidavit). The PCRA court dismissed Appellant's PCRA petition, without a

_____

[3] Appellant filed a petition for allowance of appeal, which our Supreme Court denied. ***See Commonwealth v. Branch-Samuels***, 227 A.3d 1269 (Pa. 2020).

hearing, on July 21, 2021,[4] after providing appropriate notice pursuant to Pa.R.Crim.P. 907.

On December 22, 2021, Appellant filed another PCRA petition, alleging a breakdown in PCRA court operations and requesting the court to reinstate his PCRA appeal rights, *nunc pro tunc*. The next day, the PCRA court reinstated Appellant's appeal rights.[5]

Appellant filed a *nunc pro tunc* appeal. Appellant, represented by new counsel, raised for the first time several claims asserting PCRA counsel's ineffectiveness. **Branch-Samuels**, 220 A.3d 686 (unpublished memorandum at 3-4). We concluded, pursuant to **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021), Appellant was permitted to raise his ineffectiveness claims for the first time on appeal. **Branch-Samuels**, 220 A.3d 686 (unpublished memorandum at 5-6); **Bradley**, 261 A.3d at 401 ("[A] PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal.").

Notwithstanding, we further "conclude[d] that the record before us is insufficient to allow for disposition of the ineffectiveness claims that

---

[4] Although Appellant timely appealed the dismissal of his PCRA petition, this Court dismissed the appeal based on Appellant's failure to file a docketing statement. **See** Pa.R.A.P. 3517 (providing in relevant part, "[f]ailure to file a docketing statement may result in dismissal of the appeal.").

[5] The Commonwealth consented to the reinstatement.

[Appellant] raises;" vacated the order denying PCRA relief; and "remand[ed] this case to [allow Appellant] to create an evidentiary record as it relates to his ineffectiveness claims." *Branch-Samuels*, 297 A.3d 730 (unpublished memorandum at 9) (footnote omitted); *see also Bradley*, 261 A.3d at 381 (stating, in some instances, "an appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider [newly-raised ineffectiveness] claims as an initial matter." (internal citation omitted)).

On June 21, 2023, the PCRA court held an evidentiary hearing (PCRA hearing) in compliance with *Branch-Samuels*. Thomas N. Farrell, Esquire (current counsel), represented Appellant. Appellant presented the testimony of trial counsel and PCRA counsel at the PCRA hearing.

The PCRA court ultimately dismissed Appellant's PCRA petition on September 18, 2023. This timely appeal followed. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant presents three issues for review:

I. Whether PCRA counsel provided ineffective assistance for failing to contend that trial counsel provided ineffective assistance for failing to fully understand what evidence was given to counsel concerning the video footage of Elmore Square?

II. Whether PCRA counsel provided ineffective assistance for failing to contend that trial counsel should have made a timely objection that Detective [Emery] was nonresponsive[,] and a curative instruction should have been given or the testimony should have been stricken from the record?

> III. Whether PCRA counsel provided ineffective assistance for failing to contend that trial counsel provided ineffective assistance for not objecting to the Commonwealth['s] closing argument[,] when the prosecution commented that Shawn Yancey and Todd Kenney were Commonwealth witnesses that became unavailable[,] implying Appellant had something to do with their unavailability?

Appellant's Brief at 4.

When reviewing the denial of a PCRA petition, we examine "whether the PCRA court's conclusions are supported by the record and free from legal error." ***Commonwealth v. Johnson***, 289 A.3d 959, 979 (Pa. 2023) (citation omitted).

> The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding.

***Commonwealth v. Maxwell***, 232 A.3d 739, 744 (Pa. Super. 2020) (*en banc*) (citations omitted). "In contrast, we review the PCRA court's legal conclusions *de novo*." ***Id.*** A PCRA petitioner "has the burden of persuading [an appellate c]ourt that the PCRA court erred and that such error requires relief." ***Commonwealth v. Montalvo***, 205 A.3d 274, 286 (Pa. 2019).

Initially, it is undisputed that Appellant's instant PCRA petition is timely, as he filed it within one year of his judgment of sentence becoming final. ***See*** 42 Pa.C.S.A. § 9545(b)(1) (all PCRA petitions must be filed within one year of the date the judgment of sentence becomes final); ***see also Branch-Samuels***, 297 A.3d 730 (unpublished memorandum at 2).

- 10 -

All of Appellant's issues assert layered claims of ineffective assistance of all prior counsel. Appellant's Brief at 4. A PCRA petitioner claiming ineffective assistance of counsel

> will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

*Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009) (quoting 42 Pa.C.S.A. § 9543(a)(2)(ii)). The law presumes that counsel acted effectively. *Commonwealth v. Johnson*, 289 A.3d 959, 979 (Pa. 2023). A PCRA petitioner bears the burden of proving otherwise. *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018); *see also Commonwealth v. Charleston*, 94 A.3d 1012, 1019 (Pa. Super. 2014) ("As a general and practical matter, it is more difficult for a defendant to prevail on a claim litigated through the lens of counsel ineffectiveness, rather than as a preserved claim of trial court error." (citation omitted)).

To overcome the presumption of counsel's effectiveness, a PCRA petitioner must plead and prove each of the following three prongs:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011) (employing ineffective assistance of counsel test from *Commonwealth v. Pierce*, 527 A.2d 973, 975-76 (Pa. 1987)). … Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim.

- 11 -

*Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015) (citations modified).

> If a petitioner fails to prove any … prong[] [of the ineffectiveness test], his claim fails. Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (citations, quotation marks and brackets omitted).

"In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel." *Commonwealth v. Burkett*, 5 A.3d 1260, 1270 (Pa. Super. 2010). If the first "attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue." *Id.* A layered ineffectiveness claim requires the petitioner to properly establish each prong of the three-prong ineffectiveness test for each separate attorney. *Chmiel*, 30 A.3d at 1127.

In his first issue, Appellant claims PCRA counsel was ineffective for not asserting trial counsel's ineffectiveness, where trial counsel "did not

understand the evidence in the case concerning the video footage…." Appellant's Brief at 20. Appellant maintains the "video evidence … [was] the lynchpin to [his] conviction." *Id.*; *see also id.* at 30 (claiming Appellant's "entire trial and defense was based upon the identification of [Appellant]."). According to Appellant, trial counsel

> failed to properly understand the [technical] features on the video footage exhibit [(*i.e.*, Exhibit 40)], and therefore, he could not have been prepared to argue and try [Appellant's] case with an understanding of … arguably the most important piece of evidence.

*Id.* at 20; *see also id.* at 30 (alleging the video "zoom" function, which trial counsel failed to understand, "made the identification of [Appellant] clearer").

In his reply brief, Appellant elaborates on trial counsel's misunderstanding, and the prejudice it caused Appellant:

> Most notably, as trial counsel realized, **Appellant had gold-tipped braids** [**at the time of the shooting,**] **and only** [**the**] **enhanced video would allow the jury to see it**. When the Commonwealth did not put that video in at trial, trial counsel tailored his defense around the idea that somebody with braids may have done the homicide[,] but it was not Appellant. The inability to distinguish Appellant's gold tips was paramount to the defense. **After the video was improperly shown to the jury at closing, the damage had been done and the jury was prejudiced.**

Appellant's Reply Brief at 2-3 (emphasis added); *see also* N.T., 10/12-19/17, at 175 (Detective Messer testifying that although he could not clearly see the face of the individual depicted in Exhibit 40, he believed it was Appellant, based on the detective's prior experience with Appellant, and Appellant's conduct and appearance in the video, including "his hair").

According to Appellant, "[i]f trial counsel knew about the feature to zoom-in on the video, he would have changed his trial strategy." Appellant's Brief at 23. Appellant claims "trial counsel had no reasonable basis not to understand the evidence properly," *id.* at 25, and PCRA counsel likewise "had no reasonable basis not to raise this issue in his PCRA petition." *Id.* at 31. Appellant argues PCRA counsel was ineffective for "never ha[ving] the discussion with trial counsel whether his trial strategy would have changed if he knew about the 'enhanced' video[.]" *Id.*

Finally, Appellant asserts he "was actually prejudiced by [trial counsel's] failure to understand the video[,] and the outcome of the case would have been different" had trial counsel acted professionally. *Id.* at 30. Appellant further claims he suffered actual prejudice from PCRA counsel's failure to raise this issue in the PCRA petition, as it would have merited relief. *Id.* at 32.

The Commonwealth counters the PCRA court properly rejected Appellant's claim of PCRA counsel's ineffectiveness, where the underlying claim of trial counsel's ineffectiveness lacked arguable merit, and trial counsel had a reasonable basis for his actions. *See* Commonwealth Brief at 15-28. The Commonwealth claims this Court, in *Branch-Samuels*, 220 A.3d 686,

> already found that [] trial counsel's conclusion that the video shown during the prosecutor's closing argument was not the same as the one admitted at trial was correct, thus agreeing with [] trial counsel's interpretation of the video. While this Court found that it was error to show the video as it was not the same video admitted into evidence, it found the error to be harmless in light of the strong evidence of Appellant's guilt. Based on this Court's earlier holdings, the Commonwealth asserts that [] trial counsel

- 14 -

had correctly concluded that the video should not have been shown to the jury and thus[,] he was not ineffective in his interpretation of the video or in tailoring his closing comments around the assumption that the zoomed in video would not be shown to the jury.

*Id.* at 15-16 (internal citations omitted).

The Commonwealth further argues,

[t]rial counsel's decision to discuss Appellant's hair in his closing argument was based on his correct conclusion that the zoomed in video should not have been seen by the jury. It would be unreasonable for him to expect that the trial court would make an error and then tailor his closing argument around such an error.

*Id.* at 24. Finally, the Commonwealth claims Appellant "did not suffer any prejudice[,] even if his trial counsel's understanding of the video was inaccurate[,] given the other evidence of [Appellant's] guilt." *Id.* at 16; *see also id.* at 27 ("The video at issue here was not the one that captured the shooting but, rather, one in which the Ford Focus used in the murder was … [shown] a short time after the shooting.").

At the PCRA hearing, trial counsel testified regarding the video evidence, as follows:

But [in Exhibit 40,] the Elmore Square video[, the Commonwealth] provided a second enhanced version, which, from my understanding, … [t]he video had a zoomed-in feature. I think we get these today. I'm not that technologically savvy. It says plus and minus and [if one] hits the plus[, the video image] zooms in. That often makes the quality compromised. So it only helps so much to zoom in.

This was different. This was a video that appeared to have some sort of other technology that was employed to make it clear -- maybe make the colors better and maybe make it a little closer.

- 15 -

So yeah, I was aware of that in discovery.  But as the trial went on, the Commonwealth only put in the original video.  They only played the original video for the jury.

* * *

Had I known that there was this enhanced video, I would have absolutely objected because [the Commonwealth] hadn't laid a foundation for whether it was admissible.  For instance, the enhanced video[,] my recollection is[,] you could not only see more close-up, but you could see colors better.

… I made a big deal [to the jury] of the fact that in the video that the jury saw[, which] was the only video from Elmore Square that I was aware was in evidence, it had no color to the hair of the person that [police] were trying to say was [Appellant].  The suspect had thick long dreads.  [Appellant] had long dreads at the time [of the shooting].  But [Appellant's] dreads had, I believe, gold tips on the end[,] as if the hair had been d[y]ed.

In the video the jury saw during the trial, there was absolutely no indication of any gold [on the suspect's hair].  In the enhanced version, arguably you could see a shade of that color.  I knew that before the trial.  …  I had a potential alternative trial strategy in mind, based on that second video but [the Commonwealth] never played [the video,] so I never employed it.

N.T., 6/21/23, at 14-17.

With respect to the "alternative strategy," trial counsel explained it involved introducing evidence that Appellant's phone was not located near the scene of the shooting at the relevant time; rather, it was in a different section of Pittsburgh (nearby Elmore Square).  *Id.* at 19-21.  Trial counsel further testified:

I showed [the video] to about fifty people before the trial.  That was my own mock jury, so to speak.  I was trying to get other people's opinions between the two videos.

- 16 -

And I had enough feedback that enough people felt like, I think I can see the bottom of the [suspect's] dreads were a shade different [*sic*] color, that that is not an argument I was willing to make, should that video have come into evidence.

*Id.* at 18.

The PCRA court opined that it properly rejected Appellant's ineffectiveness claim, reasoning as follows:

Trial counsel asserted at the PCRA hearing that he would have adopted a different trial strategy had he known that the zoomed in image on the video would be shown to the jury. (PCRA hearing, June 21, 2023, … at 17). [Trial c]ounsel would have instead introduced evidence that Appellant's phone was in downtown Pittsburgh at the time the crime was committed. This alternative strategy was not without risk, as the same phone records could then be used by the Commonwealth to establish that Appellant's phone was in Elmore Square (the area in the video introduced at trial) approximately one hour after the shooting. In addition, **this evidence would have been weighed against substantial evidence tying Appellant to the Ford Focus**. ([Price] testified that she rented the car for Appellant, that Appellant drove the car from the rental office, and that Appellant texted [Price] to report the car as stolen after the homicide). **This strategy would not have offered Appellant a substantially greater potential for success, and [trial] counsel was not ineffective for failing to pursue it**. *Commonwealth v. Durrett King*, 195 A.3d 255, 259 (Pa. Super. 2018) [("Courts should not deem counsel's strategy or tactic unreasonable unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.")].

PCRA Court Opinion, 1/17/24, at 6-7 (emphasis added).

Our review confirms the PCRA court's reasoning is supported by the law and the record, and we agree with its conclusion. There is no arguable merit to Appellant's underlying claim of trial counsel's ineffectiveness. Further, trial counsel articulated a reasonable basis for his actions. Accordingly, PCRA

- 17 -

counsel cannot be deemed ineffective for failing to raise this meritless claim. *See Treiber*, 121 A.3d at 445. Appellant's first ineffectiveness claim merits no relief.

In his second issue, Appellant argues PCRA counsel was ineffective for failing to raise a claim of trial counsel's effectiveness, where trial counsel neglected to object to impermissible trial testimony from Detective Emery. *See* Appellant's Brief at 33-43. Appellant claims trial counsel should have objected during the following exchange, during counsel's cross-examination of Detective Emery:

Q. [Trial counsel]: You were looking on the 13th for the [vehicle in the surveillance video] because you had information that it was associated to a person of interest, correct?

A. [Detective Emery]: Correct. I had been looking for it for more than [April] the 13th, from the time we got the video until [the] time we located the vehicle.

Q. And again, it's not the car that interested you, it was the person connected to the car, correct?

A. Correct.

* * *

Q. All right. So you went up and you actually found the car, correct?

A. Yes.

Q. And you found a person associated with that car?

A. Yes.

Q. And you identified that person?

- 18 -

A. Yes.

Q. As in Mark Cabbagestalk [(Mr. Cabbagestalk or Cabbagestalk)]?

A. Yes.

Q. And you offered a report relative to this, correct?

A. Yes.

Q. You wrote in your report Mr. Cabbagestalk had long dreadlocks just like [Appellant], correct?

A. Yes.

Q. First of all, there is video surveillance up there every day, correct?

A. Yes.

Q. And … when you met with Mr. Cabbagestalk, am I correct, you placed him in handcuffs, you detained him, correct?

A. No, he wasn't detained at that point, it was a mere encounter. **Once I approached him**[,] **I could see he was not the same individual that I saw in the video**.

N.T., 10/12-19/17, at 243-44 (emphasis added).  Trial counsel did not object.

According to Appellant,

[i]f trial counsel timely objected, there is a reasonable possibility that the results would have been different.  The trial court may have granted a mistrial or given a timely curative instruction to Detective Emery's testimony.

Appellant's Brief at 40-41.  Appellant further argues that the failures of trial counsel and PCRA counsel prejudiced him.  *Id.* at 41.

The Commonwealth counters the PCRA court properly rejected Appellant's ineffectiveness claim, where his underlying claim of trial counsel's

ineffectiveness lacks arguable merit.  Commonwealth Brief at 29; *see also id.* at 34 (asserting Detective Emery "simply explained why he did not arrest Mr. Cabbagestalk," and his testimony "in no way implicated Appellant.").  The Commonwealth argues, contrary to Appellant's claim, Detective Emery's answer to trial counsel's above-cited cross-examination was not objectionable, and "was responsive to the question asked." *Id.* at 34.

> According to the Commonwealth, the jury
>
> was entitled to hear what happened during the course of the investigation, and that included the fact that the police believed that [A]ppellant was the person caught on video.  [Moreover,] … the detectives could not conclusively testify that it was [A]ppellant who was on the surveillance video, because that was for the jury alone to decide.

*Id.* at 29-30 (footnote omitted).  Finally, the Commonwealth points out the trial court gave the jury cautionary instructions concerning the detective's testimony, and the jury's role as the sole arbiter of fact.  *Id.* at 35-36 (citing N.T., 10/12-19/17, at 173, 260, 534).

In *Branch-Samuels*, we explained Detective Emery's testimony and the trial court's rulings on trial counsel's objections:

> Detective Emery testified that he did not know [Appellant] prior to the [shooting; however, he] did meet [Appellant] during the course of the investigation.  [N.T., 10/12-19/17,] at 221-22.  During redirect examination, Detective Emery testified that he identified [Appellant] as "[t]he person in the two videos that I watched." *Id.* at 259-[]60.  [**Trial**] **counsel objected and the trial court sustained the objection, struck the testimony, and immediately gave a cautionary instruction**:
>
>> The Court: Sustained.  That comment, that testimony will be stricken from the record.  Once again, Ladies and

- 20 -

Gentlemen, you are the sole judges of the facts. The witnesses can only testify as to what they did during the course of the investigation, why they did it. It is up to you to determine from your own viewing of the evidence in the case whether the Commonwealth has met its burden of proof.

*Id.* At sidebar, [trial] counsel moved for a mistrial. The court denied the motion, concluding that it was "a fine line issue," but agreed to give a cautionary instruction:

The Court: I understand your objection. The ruling that I made pretrial[,] and the ruling that I continue to make[,] is that **the officers can testify about why they did what they did**[,] **but they cannot take from the jury the ultimate determination of who the person was in the video**. They can testify[,] based on their viewing of that video as well as their investigation[,] they took certain steps. So if this officer crossed the line, and I'm not 100 percent sure that he did, because the question was, if I recall it correctly, who was [Appellant]. Because the question before that he asked and said that [*sic*] he arrested Mr. Cabbagestalk because he wasn't [Appellant], so I don't think the question was inappropriate. The answer may have crossed the line because it went from saying because we had an arrest warrant, because the basis for the arrest [*sic*] we had the video, we had the other information. So out of an abundance of caution I will instruct the jury to ignore it and move on. I will deny the motion for mistrial.

* * *

*Id.* at 261-62 [(emphasis added)].

***Branch-Samuels***, 220 A.3d 686 (unpublished memorandum at 6-8) (emphasis added).

At the PCRA hearing, Appellant's current counsel questioned PCRA counsel about Detective Emery's testimony:

- 21 -

Q. [Current counsel]: Could you tell me if there was a strategic reason why you did not contend that trial counsel provided ineffective assistance for not making a timey objection[, claiming] that Detective Emery's nonresponsive statements concerning the identification should have resulted in a curative instruction or [be] stricken from the record?

A. [PCRA counsel]: I believe that testimony was elicited on cross-examination by [trial counsel]. And for me[,] sometimes I believe it's best to let sleeping dogs lie. In other words, [**trial counsel**] **may have determined that it might have been best to not draw attention to that testimony**.

So in my opinion[,] I didn't believe [trial counsel] was ineffective for not objecting to a question lodged on cross-examination, and I thought maybe it was part of his strategy to not draw attention to that issue.

N.T., 6/21/23, at 30 (emphasis added); *see also id.* at 31 (PCRA counsel testifying he "had a discussion" with trial counsel about this issue, and trial counsel "indicated that may have been his strategy with that specific issue.").

At the PCRA hearing, trial counsel stated his reason for not lodging an objection to Detective Emery's testimony:

I think Detective Emery was being a difficult witness and evasive and I think he took a gratuitous opportunity to … get at the identity of the person even though that wasn't the question I asked him. In that light, because I [] objected so many times [to other portions of Detective Emery's testimony], I may have missed it. I don't know.

*Id.* at 9.

In its Pa.R.A.P. 1925(a) opinion, the PCRA court competently rejected Appellant's ineffectiveness claim:

Detective Em[e]ry testified that he reviewed surveillance video and subsequently met an individual suspected of being the person in the video. Upon seeing the individual, [] Cabbagestalk, in

- 22 -

person, Detective Em[e]ry concluded that Cabbagestalk was not the same person as was portrayed in the video. Appellant alleges that this testimony improperly invaded the jury's purview of ultimately determining the identity of the individual in the video. Appellant is incorrect. **The witness is permitted to explain why he took any action, including excluding Cabbagestalk as a suspect**. … ***Branch-Samuels***, [220 A.3d 686 (unpublished memorandum] at 7[)]…; ***see also Commonwealth v. Palmer***, 192 A.3d [85,] 101 [(Pa. Super. 2018)] ("The jury itself watched the videos, and was free to reach a different conclusion if it disagreed" with detective's testimony.).

    **In addition, this court gave cautionary instructions several times**[, as follows:] "You are the sole judges of the facts." ([N.T., 10/12-19/17, at] 37). "You are the fact-finders and it is your observation of the video which does prevail." ([***Id.*** at] 173). "It is up to you to determine from your own viewing of the evidence in the case whether the Commonwealth has met its burden." ([***Id.*** at] 260). "[T]he video in the case is the evidence in the case, and you are the judges of all of the facts in the case." ([***Id.*** at] 534). "Juries are presumed to follow a court's instructions." ***Commonwealth v. Mollett***, 5 A.3d 291[, 313] (Pa. Super. 2010). Since the jury was properly instructed, and Appellant has not alleged that the jury failed to follow [the trial] court's instructions, no error occurred as to this issue.

PCRA Court Opinion, 1/17/24, at 5-6 (emphasis added; capitalization modified).

We agree with the PCRA court's reasoning and conclusion, which is supported by the record and free of legal error. Because trial counsel was not ineffective, PCRA counsel cannot be deemed ineffective for failing to raise a meritless claim. ***See Treiber***, 121 A.3d at 445. Appellant's second ineffectiveness claim merits no relief.

In his third and final issue, Appellant argues PCRA counsel was ineffective for failing to raise a claim of trial counsel's ineffectiveness, based

on counsel's failure to object to the prosecutor's improper, prejudicial comments during closing arguments. *See* Appellant's Brief at 44-52.

By means of background, at trial, the Commonwealth called Yancey and Todd Kenney (Kenney) as witnesses. *See* N.T., 10/12-19/17, at 418, 582. Both invoked their Fifth Amendment rights against self-incrimination and refused to testify. *Id.* at 250, 419-21, 583, 588-89. Outside of the presence of the jury, the trial court found both Yancey and Kenney in contempt of court. *Id.* at 420-21, 590. The trial court informed the jury that Yancey and Kenney had become unavailable as witnesses "due to circumstances **of no one's fault**…." *Id.* at 597 (emphasis added); *see also id.* at 581.

In closing arguments, the prosecutor stated:

> **Kenney was a witness for the Commonwealth but became unavailable.** [] **Yancey was a witness for the Commonwealth but became unavailable**. But we do have something from [] Yancey, we have a photograph. Commonwealth's Exhibit 22 was taken on March 31, 2016[,] and there are two people in the photograph who are identified. They were identified by Detective Messer. The person in the gray hoodie, black hat is [] Yancey and the person in the middle with the white T-shirt, black pants, and long dreadlocks was [Appellant]. This is one day before the shooting.

*Id.* at 785-86 (emphasis added). Trial counsel did not object. *Id.*

Instantly, Appellant claims trial counsel was ineffective for failing to object, where the prosecutor's "characterization used in the closing argument implies that [Appellant] had something to do with [Yancey and Kenney's] unavailability." Appellant's Brief at 44. According to Appellant,

- 24 -

[t]rial counsel had no reasonable basis not to object. [Earlier in the trial, t]rial counsel objected and argued at length to keep both [Yancey and Kenney] off the stand before the jury. He argued that it was prejudicial to the defense to have them come before the jury and refuse to answer questions because it would look negatively on [Appellant]. However, when the Commonwealth gave their closing, trial counsel failed to object.

*Id.* at 48-49.

The Commonwealth counters Appellant failed to establish, *inter alia*, the arguable merit prong of the ineffectiveness test.[6] *See* Commonwealth Brief at 41-43. The Commonwealth claims the prosecution's closing argument was not objectionable. *Id.* According to the Commonwealth:

The prosecutor's argument was simply a statement of two **facts to which the jury was already aware**. The Commonwealth had attempted to call both [Yancey and Kenney] in front of the jury. Both times, the court emphasized that the witnesses were unavailable, but that **it was nobody's fault**. Nothing that occurred at the time the witnesses were called, in the instruction by the trial court, or in the Commonwealth's argument suggested that Appellant was in any respect responsible for [Yancey and Kenney's] unavailability. … **The Commonwealth's argument in no way suggested that the unavailability of either witness had anything to do with Appellant**.

*Id.* at 42-43 (emphasis added). We agree.

This Court has stated, with respect to

a claim of prosecutorial misconduct in a closing statement, it is well settled that "[i]n reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which

---

[6] The Commonwealth further claims, "[e]ven assuming *arguendo* that there was something objectionable in the prosecutor's statement, Appellant's trial counsel had a reasonable basis not to object." Commonwealth Brief at 43 (italics added); *see also id.* at 41-42.

they were made." ***Commonwealth v. Sampson***, … 900 A.2d 887, 890 (Pa. Super. 2006) (citation omitted). Our review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. ***Commonwealth v. Rios***, 554 Pa. 419, 721 A.2d 1049, 1054 (1998).

It is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. Further, prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. Prosecutorial misconduct is evaluated under a harmless error standard. ***Commonwealth v. Holley***, … 945 A.2d 241, 250 (Pa. Super. 2008) (internal citations and quotations omitted).

***Commonwealth v. Santiago-Burgos***, 2024 PA Super 73, at 24-25 (Pa. Super. filed April 15, 2024) (citing ***Commonwealth v. Judy***, 978 A.2d 1015, 1019 (Pa. Super. 2019)).

At the PCRA hearing, Appellant's current counsel asked PCRA counsel why he did not raise a claim of trial counsel's ineffectiveness, with respect to not objecting to the prosecution's purportedly improper closing argument. N.T., 6/21/23, at 31. PCRA counsel vaguely opined, "I don't recall, as I viewed the case file, believing that was an issue." ***Id.***

During the PCRA hearing, current counsel asked trial counsel why he did not object to the prosecution's closing argument; trial counsel responded that earlier in the closing, he raised a separate objection, which had resulted in a delay in the trial. ***Id.*** at 10. Trial counsel opined: "I think the jury may have been feeling like that the delay was my fault and I didn't want it to look badly

on [Appellant]"; therefore, trial counsel thought it prudent to not make a second objection during closing argument. *Id.* at 10; *see also id.* at 11 (trial counsel testifying he did not want the jury to believe the defense was "being obstructive in delaying the proceedings again."). Trial counsel conceded that, in retrospect, the relevant portion of the closing argument at issue in this appeal "seems like something I would object to." *Id.* at 11; *see also id.* at 12 (trial counsel testifying, "it seems to be prejudicial to [Appellant] and I would have thought I would have objected."). However, trial counsel correctly pointed out that the trial court, in its multiple cautionary instructions to the jury, "went to some lengths to try to prevent the jury from concluding that [Appellant] had anything to do with [Yancey and Kenney] not testifying." *Id.* at 12-13.

In its Pa.R.A.P. 1925(a) opinion, the PCRA court rejected Appellant's ineffectiveness claim, reasoning the underlying claim lacked arguable merit:

> **The statement by the** [**prosecutor**] **merely <u>reiterated information known by the jury</u> and did not suggest or imply that Appellant was at all responsible for** [**Yancey and Kenney's**] **unavailability.** Prosecutors have substantial discretion during closing arguments and reversible error only occurs "where the[ remark's] unavoidable effect is to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and reach a fair verdict." *Commonwealth v. Yockey*, 158 A.3d 1246, 1257 (Pa. Super. 2017). **A single statement by the** [**prosecutor**] **of facts known by the jury fails to establish that the jury could no longer objectively weigh the evidence.**

PCRA Court Opinion, 1/17/24, at 6 (emphasis added).

Our review confirms the PCRA court's reasoning is supported by the law and the record, and we agree with its conclusion. As there is no arguable merit to Appellant's underlying claim of trial counsel's ineffectiveness, PCRA counsel cannot be deemed ineffective. *See Treiber*, 121 A.3d at 445. Accordingly, we affirm the PCRA court's dismissal of Appellant's final ineffectiveness claim. *See* PCRA Court Opinion, 1/17/24, at 6; *see also Commonwealth v. Harris*, 884 A.2d 920, 931 (Pa. Super. 2005) (upholding trial court's rejection of appellant's prosecutorial misconduct claim, stating "the prosecutor's comments did not constitute reversible error, because the comments **concerned evidence already on the record** and constituted oratorical flair." (emphasis added)).

Based on the foregoing, we conclude the PCRA court did not err or abuse its discretion in dismissing Appellant's PCRA petition. We thus affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/31/2024

- 28 -